## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TRUDI SHOUSE,

     Plaintiff,

     v.

CATHOLIC CHARITIES OF NORTHEAST
KANSAS, INC.,

     Defendant.

Case No. 20-2462-EFM-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff Trudi Shouse's Motion for Leave to File First Amended Complaint. (ECF 25.) Shouse's complaint alleges that her former employer, Defendant Catholic Charities of Northeast Kansas, Inc. ("Catholic Charities"), subjected her to a series of unwarranted adverse employment actions after she reported and lawfully tried to stop Catholic Charities from violating the False Claims Act ("FCA"). (ECF 1 ¶¶ 2, 50.) Her complaint asserts a claim for unlawful retaliation under the FCA, 31 U.S.C. § 3730(h). In the current motion, she now seeks to amend her complaint to add a claim for retaliatory discharge for whistleblowing under Kansas law. Catholic Charities opposes the motion on the grounds that the proposed amendment is futile because, according to Catholic Charities, the alternative remedies doctrine bars the Kansas retaliatory discharge claim. The court disagrees. Unlike other cases in which courts have applied the doctrine—typically not at the pleadings stage—Shouse has both pleaded and explained how each claim seeks to redress a distinct harm. Because of this, her proposed claim is not subject to dismissal under the alternative remedies doctrine. For these reasons, explained in more detail below, the court grants Shouse leave to file her first amended complaint.

## I.      BACKGROUND

Shouse's complaint alleges that Catholic Charities took adverse employment actions against her, including terminating her employment, in retaliation for her reporting and taking actions to stop Catholic Charities' various FCA violations.  (ECF 1 ¶¶ 1-3.)   Catholic Charities previously employed Shouse as the clinical director of the organization's hospice program.  That program provides service for Medicare beneficiaries, and therefore it must operate and furnish those services in compliance with applicable laws.  Shouse alleges that Catholic Charities violated the FCA, 31 U.S.C. § 3729(a)(1); the Anti Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)(A) (which is itself a violation of the FCA)[1]; or both by providing services and supplies to skilled nursing facilities in exchange for referrals of Medicare-eligible patients and by improperly billing for patients ineligible for hospice services.

Shouse alleges that she engaged in protected activity by reporting or trying to lawfully stop FCA violations.  This includes the following: (1) using the hospice's Angel Vigil program to staff and provide services to skilled nursing facilities to induce patient referrals in violation of both the Anti-Kickback Statute and the FCA; (2) using the hospice's own nursing staff to provide services for the Villa St. Francis nursing home to induce patient referrals in violation of both the Anti-Kickback Statute and the FCA; (3) the hospice's practice of supplying skilled nursing facilities with personal-care supplies to induce patient referrals in violation of both the Anti-Kickback Statute and the FCA; (4) unlawful billing by both Catholic Charities and the hospice program for patients who were not properly certified as hospice-eligible under Medicare regulations in violation of the FCA.  (*Id.* ¶ 50.)

---

[1] *See* 42 U.S.C. § 1320a-7b(g).

Shouse now moves to amend to add a Kansas common-law claim for retaliatory discharge for whistleblowing.  Shouse's proposed first amended complaint alleges that Catholic Charities violated multiple regulations promulgated by the Centers for Medicare & Medicaid Services ("CMS") that put patients at risk and deprived them of the appropriate level of care.  (ECF 25-1 ¶¶ 59-61.)  She alleges that she reported what she reasonably believed were violations of CMS regulations and that Catholic Charities unlawfully terminated her employment as a result of her reports.  (*Id.* ¶¶ 63-65.)  Catholic Charities opposes the amendment as futile.

## II.    LEGAL STANDARD

Once a party has filed a responsive pleading, the opposing party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires.  FED. R. CIV. P. 15(a)(2).  The purpose of this rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted).  The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted.  *See Wilkerson*, 606 F.3d at 1267 (in the absence of such a showing, amendment should be allowed); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that there is a presumption in favor of amendment absent such a

showing "or a strong showing of the remaining *Forman* factors").  Whether to grant a motion to amend is within the court's sound discretion.  *Gorsuch,* 771 F.3d at 1240.

## III.    FUTILITY BASED ON THE ALTERNATIVE REMEDIES DOCTRINE

Here, Catholic Charities opposes the amendment as futile.  "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal."  *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).  In the context of futility, the court most often considers whether the amended complaint could withstand a Rule 12(b)(6) motion to dismiss.  *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017) (stating the court uses the 12(b)(6) standard when evaluating futility).  In this case, Catholic Charities argues that Shouse has no plausible Kansas common-law claim because the alternative remedies doctrine precludes the claim.

"Under the alternative remedies doctrine, a state or federal statute could be substituted for a state retaliation claim—if the substituted statute provides an adequate alternative."  *Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1, 8 (Kan. 2011).  But the alternative remedies doctrine does not apply when the common-law claim redresses a different harm.  *See id.* at 9 (noting that a retaliatory-discharge claim was aimed at redressing a wrongful termination whereas a claim under the Kansas Wage Payment Act was aimed at redressing failure to pay earned wages).  And, in the context of common-law claims accompanying an FCA claim, "an FCA claim is not an adequate alternative remedy when the common law claim clearly encompasses conduct beyond violations of the FCA or addresses different harms than the FCA claim."  *United States ex rel. Coffman v. City of Leavenworth, Kan.*, 303 F. Supp. 3d 1101, 1130 (D. Kan. 2018) (internal quotations

omitted), *aff'd,* 770 F. App'x 417 (10th Cir. 2019); *see also Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *7 (D. Kan. Sept. 20, 2013) (collecting cases).

Here, Shouse's proposed first amended complaint pleads conduct beyond FCA violations and addresses a different harm than her FCA retaliation claim—namely, allegedly retaliating against her for reporting CMS violations that compromised patient safety, not for reporting FCA violations that amounted to fraud and illegal enticements. Therefore, the alternative remedies doctrine does not preclude the state-law claim because it seeks to redress a different harm. (*See* ECF 25-1 ¶¶ 55-67.) Although Catholic Charities disagrees with this characterization and notes that the same CMS regulations underlie the FCA claim, Catholic Charities has not cited any authority that an FCA retaliation claim redresses the harm of retaliation for reporting alleged CMS violations that compromise patient safety. In order to bar an amendment based on futility, the court must have a high degree of certainty that proposed claim would be subject to dismissal— something lacking on this record. *See Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (amendment should typically be allowed unless it is "patently obvious" that the plaintiff could not prevail); *see also Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC, 2015 WL 1957782, at *3 (D. Kan. Apr. 29, 2015) ("A party opposing amendment on the ground of futility must show more than a possibility that a claim would not withstand a motion to dismiss; it must be established that the claim would be dismissed.").

Both parties rely on *Coffman v. City of Leavenworth*, a case from this district in which a former municipal wastewater treatment plant employee brought multiple claims against her former employer. These claims included both an FCA retaliation claim and a Kansas common-law whistleblower retaliation claim. 303 F. Supp. 3d 1101. The FCA retaliation claim was premised on plaintiff's allegations that her former employer had taken adverse employment actions against

her in retaliation for reporting the employer's false claim to the Federal Emergency Management Agency.   There, the court found that the alternative remedies doctrine did not preclude the plaintiff's common-law whistleblower retaliation claim because it was premised on both fraud *and* safety issues at the wastewater treatment plant.   Therefore, "her claim relates to conduct outside the scope of her FCA retaliation claim."   *Id.* at 1131.   *Coffman* relied on the plaintiff's own characterization of her claim in the pretrial order and, unlike the procedural posture here, *Coffman* involved a finding made at the summary-judgment stage.   *Compare with United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2015 WL 6801829, at *10 (D. Kan. Nov. 5, 2015) (Melgren, J.) (applying the doctrine on summary-judgment where the plaintiff's common-law retaliatory discharge claim was based on the same factual allegations underlying his FCA retaliation and employment discrimination claims, and he had not articulated how his "common-law claim addresses a particular harm left unaddressed" by the other claims).

This case is analogous to *Coffman* in that Shouse has both pleaded and argued that her proposed common-law whistleblower retaliation claim is premised on her reporting alleged CMS regulatory violations that compromised patient safety whereas her FCA claim is premised on her reporting and taking actions to stop alleged FCA violations aimed at preventing fraud on the United States and illegal enticements.   Specifically, Shouse alleges that she reported that Catholic Charities violated CMS regulations to ensure patient safety by denying patients the appropriate level of care by: (1) using its "Angel Vigil program as a substitute staffed by unlicensed personnel incapable of handling acute patient medical crisis" and (2) "regularly staffing the Angel Vigil program with outside agency staff to perform core patient services when there were no extraordinary or other non-routine circumstances to justify the use of outside agency staff."   (ECF 25-1, at 19.)   In contrast, her FCA retaliation claim is limited to alleged violations of the FCA—

"fraudulent attempts to cause the government to pay out sums of money."  (*Id.* at ¶ 50); *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 736 (10th Cir. 2019) (citing 31 U.S.C. § 3729(a)(1)).  At the pleading stage, these allegations are sufficient to show that the claims redress different harms, and therefore the alternative remedies doctrine does not bar amendment.  *Cf. Lipka*, 2013 WL 5304013, at *7 (finding the alternative remedies doctrine precluded a common-law whistleblower retaliation claim where plaintiff did not plead or argue that the claim addressed a different harm than the FCA retaliation claim).

Catholic Charities focuses on the claims' factual overlap and characterizes both claims as being premised on violations of CMS regulations.  Catholic Charities reasons that, because patient safety is at the core of CMS regulations, the FCA provides an adequate alternative remedy.  But the fact that both claims involve or implicate CMS regulations is not tantamount to showing the common-law whistleblower retaliation claim addresses the same harm addressed by the FCA retaliation claim.  It demonstrates factual overlap, which alone is not is not determinative.  *See Farris v. Labette Cty. Med. Ctr.*, No. 19-02060-CM-GEB, 2019 WL 4917897, at *3 (D. Kan. Oct. 4, 2019) (finding the alternative remedies doctrine did not apply where the claims both arose from the same chain of events, but the legal theories were analytically distinct and addressed separate harms).  Indeed, Catholic Charities cites no case in which a court has found that the FCA was meant to address patient safety concerns or would otherwise provide an adequate alternative remedy to a state-law claim alleging retaliation for reporting patient-safety concerns.

Catholic Charities also takes issue with Shouse's characterization of the alleged violations as compromising patient safety.  These types of arguments more appropriately bear on whether Shouse has stated a common-law whistleblower retaliation claim (which Catholic Charities does not argue), not whether the harm to be redressed by the claim is the same.  *See Goodman v. Wesley*

*Med. Ctr., LLC*, 78 P.3d 817, 821 (Kan. 2003) (stating one of the claim elements is whether a reasonable person would have concluded the employer was "engaged in activities in violation of rules, regulations or the law pertaining to public health, safety, and the general welfare"); *see also Palmer v. Brown*, 752 P.2d 685, 689 (Kan. 1988) (first recognizing the tort).  In other words, the fact that Catholic Charities disagrees that the alleged violations would compromise patient safety does not somehow transform the nature of the harm Shouse has pleaded.

## IV.    CONCLUSION

Catholic Charities has not shown that the alternative remedies doctrine precludes Shouse's proposed common-law whistleblower retaliation claim so as to render the proposed amendment futile.  Because of this, the court grants Shouse's motion and directs her to file her first amended complaint (ECF 25-1) as a separate docket entry within two business days.

**IT IS THEREFORE ORDERED** that Plaintiff Trudi Shouse's Motion for Leave to File First Amended Complaint (ECF 25) is granted.

**IT IS SO ORDERED.**

Dated January 28, 2021, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge